IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| EVOLVE FEDERAL CREDIT UNION, § § § | |
| Plaintiff, § § | |
| v. § | EP-11-CV-367-KC |
| § | |
| MARIA CONSUELO DOMINGUEZ RODRIGUEZ, SERGIO R. RODRIGUEZ, MIGUEL DOMINGUEZ and MARIA G. DOMINGUEZ, § § § § § § § | |
| Defendants. § | |

**ORDER**

On this day, the Court considered Plaintiff Evolve Federal Credit Union's Motion for Default Judgment ("Motion"), ECF No. 17. For the reasons set forth herein, the Motion is **DENIED**.

**I.   BACKGROUND**[1]

   **A.   The Complaint**

Defendants Maria Rodriguez, Sergio Rodriguez, and Maria Rodriguez's mother, Maria Dominguez (collectively "Defendants"), own a property located at 109 Landon Way in El Paso, Texas (the "property"). Pl.'s First Am. Compl. and Request for Declaratory J. ("Complaint") ¶¶

---

[1] The factual background was previously set out in the Court's January 12, 2012, Order. *See Evolve Fed. Credit Union v. Rodriguez*, No. EP-11-CV-367-KC, 2012 WL 113691, at *1-2 (W.D. Tex. Jan. 12, 2012). Nevertheless, it is necessary to reiterate the relevant facts.

1

10, 17, ECF No. 18.  In June of 2008, Maria Rodriguez and Sergio Rodriguez applied to Plaintiff for a $98,000 home equity loan (the "loan") to be secured by a deed of trust on the property.  Compl. ¶ 12.  Maria and Sergio Rodriguez allegedly obtained the loan without Maria Dominguez's consent by falsely representing that Maria Dominguez and Maria Rodriguez were the same person.  Compl. ¶¶ 14-15.

Maria and Sergio Rodriguez stopped making payments on the loan.  Compl. ¶ 16.  Defendants then filed a lawsuit against Plaintiff "asking the court to cancel the entire indebtedness and give [Defendants] back what little they had paid, all because the mother supposedly had not in fact consented to the 2008 transaction."  Compl. ¶ 16.

On July 15, 2011, Defendants provided Plaintiff with notice that Defendants were rescinding the loan transaction.  Compl. ¶ 17.  In response, Plaintiff filed the instant lawsuit seeking a declaratory judgment that Defendants' fraud bars the right of rescission under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), a permanent injunction restraining Defendants from commencing any action to rescind the loan, and "costs and such and further relief" to which Plaintiff is entitled.  Compl. ¶ 21.  Plaintiff served Defendants with a summons and a copy of the Complaint.  *See* ECF Nos. 4-11.  However, Defendants failed to appear.

    B.    **The Motion**

On January 5, 2012, Plaintiff filed the instant Motion for default judgment pursuant to Federal Rule of Civil Procedure 55.  *See* Mot.; Pl.'s Request for Clerk's Entry of Default, ECF No. 12; *see also* Fed. R. Civ. P. 55.  In the Motion and attached affidavits, Plaintiff presents additional facts regarding a state court foreclosure proceeding involving the parties and the property that are not found in the Complaint.  Plaintiff allegedly filed an Application for

Foreclosure ("Application") in the 210th District Court, El Paso County, Texas ("state court") on November 2, 2009. Aff. of Lane Reedman ¶ 4, ECF No. 15. In response to the Application, Defendants filed a lawsuit challenging the validity of the loan documents and foreclosure. *Id.* The lawsuit was later consolidated with the Application. *Id.* On December 8, 2010, the state court entered judgment against Defendants Maria Rodriguez, Sergio Rodriguez, and Maria Dominguez in the amount of $100,425.41 plus $20,197.47 in attorney's fees and expenses. *See* Aff. of Lane Reedman Ex. 10 ("State Court Judgment"), ECF No. 15-5. Although not mentioned in the state court's written judgment, Plaintiff allegedly prevailed in state court because of the fraud exception to the Texas Constitution's homestead exemption. Mot. ¶ 8. Finally, the Motion and affidavits clarify that Defendants' July 15, 2011 notice of rescission was made pursuant to TILA. *See* Aff. of Lane Reedman Ex. 11, ECF No. 15-6.

### C. The Court Order

The Court denied Plaintiff's request for a default judgment as to the permanent injunction, and ordered further briefing on the Complaint's claim for a declaratory judgment. *See Evolve Fed. Credit Union v. Rodriguez*, No. EP-11-CV-367-KC, 2012 WL 113691, at *6 (W.D. Tex. Jan. 12, 2012). Specifically, the Court instructed Plaintiff to "brief the issue, with citation to legal authority, of how the Complaint states a claim for relief in the form of a declaratory judgment that the borrowers' actions in this case bar the right to a rescission under the Truth in Lending Act." *Id.* Pursuant to the Court's Order, Plaintiff submitted a supplemental brief on January 27, 2012. Supplemental Br. in Resp. to Ct. Order ("Brief"), ECF No. 20.

## II. DISCUSSION

### A. Standard

3

A default shall be entered if a party fails to plead or otherwise defend, and that failure is shown by affidavit or otherwise. Fed. R. Civ. P. 55(a). After default is entered, a party may move for a default judgment. *See* Fed. R. Civ. P. 55(b)(2); *N. Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Because "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," courts reviewing a motion for default judgment take the plaintiff's well-pleaded factual allegations as true. *Caterpillar Fin. Servs. Corp. v. Lindsey*, 218 F.R.D. 145, 148 (S.D. Tex. 2003); *United States ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

Notably, a "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). Indeed, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Id.* (quoting *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). This disfavor reflects our judicial system's preference for a trial on the merits. *Davis v. Parkhill-Goodloe Co.*, 302 F.2d 489, 495 (5th Cir. 1962). Thus, the decision to issue a default judgment is left to the Court's discretion, and any doubt as to whether a default judgment should be entered must be resolved in favor of the defaulting party. *Lewis*, 239 F.3d at 767; *Caterpillar*, 218 F.R.D. at 148 (S.D. Tex. 2003).

Further, courts will only render a default judgment if a plaintiff's "well-pleaded factual allegations establish a cause of action entitling Plaintiff to relief." *Santana v. First Am. Solutions, LLC*, No. EP-11-CV-186-PRM, 2011 WL 3666591, at *2 (W.D. Tex. Jun. 27, 2011); *see also Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)

(considering whether there is "a sufficient basis in the pleadings for the judgment entered"). Thus, when a plaintiff fails to state a claim upon which relief could be granted, a court may deny a request for default judgment. *Lewis*, 236 F.3d at 767-68 (holding denial of default judgment is appropriate in situations where factual allegations, even if found true, do not establish liability).

  B.  **Analysis**

  Plaintiff advances two arguments in support of its request for a judgment declaring that fraud bars the right to rescind under TILA. *See generally* Mot.; Br. First, Plaintiff claims that federal common law — and in particular, the fraud exception to state homestead exemptions — applies to bar Defendants' TILA rescission claim. Mot. 2-4; Br. ¶¶ 10-14. Second, Plaintiff claims the doctrine of res judicata bars Defendants from asserting their TILA rescission claim. Br. ¶¶ 2-9.

  These arguments fail. Even assuming they are legally sound, neither the fraud exception to the homestead exemption, nor res judicata demonstrate how Plaintiff's Complaint states a claim for relief. The Court addresses each argument in turn.

  1.  **Federal common law**

  Plaintiff argues that the Court should strictly construe TILA and declare that fraud bars Defendants' right to rescission. Br. ¶ 14 (citing *Pasquantino v. United States*, 544 U.S. 349, 360 (2005); *Brown v. Barry*, 3 U.S. 365, 367 (1797)). However, Plaintiff has not established that the common law recognizes that borrower fraud bars TILA rescission claims.

  TILA supports the informed use of credit by requiring that lenders disclose certain credit terms so that consumers could comprehend and compare various credit term options. 15 U.S.C. § 1601. In doing so, TILA protects consumers from "inaccurate and unfair credit practices."

*Fairley v. Turan-Foley Imps., Inc.*, 65 F.3d 475, 477 (5th Cir. 1995).  TILA accomplishes this goal by deterring general illegalities, and not simply ensuring justice is done in a particular transaction.  *See Edwards v. Your Credit Inc.*, 148 F.3d 427, 432, 441 (5th Cir. 1998).  Thus, TILA is to be construed "strictly against creditors and construed liberally in favor of consumers."  *Fairley.*, 65 F.3d at 482.  In certain credit transactions, TILA allows consumers to rescind a loan.  15 U.S.C. § 1635(f).  It is this right to rescission that is at issue in this case.

According to Plaintiff, the notion that fraud serves as a defense to rescission claims is "well-developed" in federal common law.  Br. ¶ 11.  Plaintiff cites sixteen cases (the "homestead cases" or "cases") as examples of such "well-developed" federal common law.[2]  *Id.*

The homestead cases analyze fraud's impact on the exercise of state-law homestead exemptions in the context of bankruptcy proceedings.  Homestead exemptions generally prevent creditors from forcing the sale of a family home or business as long as the debtor lives on the property.  *See United States v. Rodgers*, 461 U.S. 677, 684 (1983) (discussing Texas's homestead exemption); James L. Baker, *The Texas Homestead Exemption's Near Ban on Home Equity Lending: It's Time for the People to Decide*, 33 Hous. L. Rev. 239, 251-53 (1996).  Further, the homestead exemption protects a landowner's family by allowing the family to continue to occupy

---

[2] The homestead cases are: *Gardner v. Johnson*, 195 F.2d 717, 720 (9th Cir. 1952); *In re Stanton*, 457 B.R. 80, 96-97 (Bankr. D. Nev. 2011); *In re Champalanne*, 425 B.R.707, 711 (Bankr. S.D. Fla. 2010); *In re Hogan*, 214 B.R. 882, 886 (Bankr. E.D. Ark. 1997); *In re Park*, 246 B.R. 837, 844 (Bankr. E.D. Tex. 2000); *In re Curry*, 160 B.R. 813, 819 (Bankr. D. Minn. 1993); *In re White*, 28 B.R. 240, 243 (Bankr. D. Va.1983); *Matter of Settle*, 14 B.R. 31, 38 (Bankr. D.N.H. 1981); *Matter of Dorricott*, 5 B.R. 192, 194 (Bankr. D. Ohio 1980); *In re Myers*, 383 F. Supp. 251, 261 (W.D. Mo. 1973); *In re Grisanti*, 58 F. Supp. 646, 647 (D.C. Ky. 1945); *In re Hupp*, 43 F.2d 159, 160 (D.C. Cal. 1930); *In re Libby*, 253 F.278, 280 (D.C. Fla. 1918); *In re Cochran*, 185 F. 913, 917 (D.C. Ga. 1911); *In re Long*, 116 F. 113, 114 (D.C. Pa. 1902); *Pratt v. Burr*, 19 F. Cas. 1248, 1249 (C.C. Wis.1857).

the land after the debtor's death, even if creditors or heirs have a superior claim. *Rodgers*, 461 U.S. at 684-86; Alison D. Morantz, *There's No Place Like Home: Homestead Exemption and Judicial Constructions of Family in Nineteenth-Century America*, 24 Law & Hist. Rev. 245, 246 (2006).

Plaintiff's argument appears to take a broad view of the common law in this area. According to Plaintiff, the homestead cases showcase the common law's reluctance "to give a debtor a windfall for violating the law." Br. ¶ 12. Plaintiff's request that the Court adopt this "windfall" rationale in the TILA context is presented by analogizing homestead exemptions to a TILA rescission and arguing that since fraud bars one, it must bar the other. Br. ¶ 14 ("The Court should apply the foregoing common law to this case."). Thus, Plaintiff seems to assert that the homestead cases embody an expansive common law rule that borrower fraud bars the exercise of *any* action to avoid the forced sale of a homestead to pay a debt. Based on this, Plaintiff asserts that TILA and its various amendments are "in derogation of the common law" and thus must be "strictly construed," to allow for the application of this generous rule. Br. ¶ 14 (citing *Pasquantino*, 544 U.S. at 360; *Brown*, 3 U.S. at 367).

However, courts will strictly construe statutes in derogation of the common law only if such common law is "well-established." *See Pasquantino*, 544 U.S. at 359. Here, the common law rule Plaintiff describes is not well-established. Plaintiff has cited no authority that sanctions such a broad construction of the holdings in the homestead cases. Plaintiff has not even cited any authority applying the rationale in the homestead cases to a TILA rescission claim. Indeed, at least one court has implicitly disapproved of the analogy between the homestead exemption and TILA. *See In re MacNeal*, No. 06-14202-BKC-JKO, 2007 WL 917255 (Bankr. S.D. Fla. Mar.

22, 2007).  In *In re MacNeal*, the United States Bankruptcy Court of the Southern District of Florida discussed the interaction between TILA and the Florida homestead exemption, stating:

> TILA claims are not based in any way on the Florida homestead exemption rights, and there is no provision in Florida homestead law that could give rise to a TILA claim. . . . TILA and related claims are independent rights established under federal law.  As such, [TILA] claims cannot be subsumed into . . . homestead rights arising under state law.

*Id.* at *2.

As this language demonstrates, state homestead exemptions and the right to rescind under TILA are unrelated.  The homestead cases are thus inapposite, and do nothing to further Plaintiff's argument that fraud bars the right to rescind under TILA.

Further, it is questionable that the "well-developed" common law rule described by Plaintiff even exists at all.  Plaintiff admits that there is a "dearth" of authority holding that borrower fraud bars a rescission claim under TILA.  *See* Compl. ¶ 20 ("This case will begin, *apparently from scratch*, the process of determining how fraudulent inducement by a home equity loan debtor affects the right of rescission." (emphasis added)); Br. ¶¶ 1, 11 (stating whether fraud bars rescission is an issue "of first impression" and thus there is a "lack of federal cases on point" and a "similar dearth of state authority").  Instead, Plaintiff offers the homestead cases as support.  As described above, these cases are inapposite; however, even assuming the homestead cases are somehow relevant, it is unclear whether they establish a fraud defense under federal common law.

The distinction between federal common law and statutory interpretation is not always clear.  *See, e.g.*, Martha A. Field, *Sources of Law: The Scope of Federal Common Law*, 99 Harv. L. Rev. 881, 893-4 (1986) (discussing how certain definitions of federal common law "leave[] no

clear-cut line between federal common law and federal interpretational law"); Peter Westen & Jeffrey S. Lehman, *Is There Life for Erie After the Death of Diversity?*, 78 Mich. L. Rev. 311, 332 (1980) ("The difference between 'common law' and 'statutory interpretation' is a difference in emphasis rather than a difference in kind."). Here, many of the homestead cases appear to be interpreting bankruptcy statutes and regulations, rather than applying a well-settled federal common law doctrine.[3] However, instead of providing the Court with guidance or explanation, Plaintiff simply presents the cases in a page-long string cite. Br. ¶ 13.

Making the analysis even more elusive is the fact that bankruptcy law incorporates state law homestead exemptions. *See* 11 U.S.C. § 522(b)(3)(A) (allowing exemption of "any property that is exempt under . . . State or local law"). Indeed, some of the homestead cases indicate that courts should look not to federal law, but to state common law.[4] *In re Champalanne*, 425 B.R.707, 711 (S.D. Fla. 2010) (applying rule set out in *Havoco of Am., Ltd. v. Hill*, 790 So.2d 1018, 1028 (Fla. 2001)); *In re Curry*, 160 B.R. 813, 819 (D. Minn. 1993) (relying on state common law). If this is the case, then Plaintiff's argument fails before it even begins, since it is

---

[3]  *See Gardner v. Johnson*, 195 F.2d 717, 720 (9th Cir. 1952) (analyzing 11 U.S.C. § 24); *In re Stanton*, 457 B.R. 80, 96-97 (Bankr. D. Nev. 2011) (analyzing whether debtor had fraudulent intent under 11 U.S.C. § 552(o)); *Matter of Dorricott*, 5 B.R. 192, 194 (Bankr. D. Ohio 1980) (analyzing 11 U.S.C. § 522(g)(1) and 11 U.S.C. § 24); *In re Myers*, 383 F. Supp. 251, 261 (W.D. Mo. 1973) (interpreting Section 6 of the Bankruptcy Act, 11 U.S.C. § 24); *In re Grisanti*, 58 F. Supp. 646, 647 (D.C. Ky. 1945) (same); *In re Hupp*, 43 F.2d 159, 160 (D.C. Cal. 1930) (noting the "language of the [Bankruptcy A]ct itself" discriminated between exempt property and property transferred in fraud); *In re Cochran*, 185 F. 913, 917 (D.C. Ga. 1911) ("[T]he question here must be determined by a proper construction of the code referred to.").

[4]  The Court notes that "the appropriate analysis in determining if federal statutory law governs a question previously the subject of federal common law is not the same as that employed in deciding if federal law pre-empts state law." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 316 (1981). However, Plaintiff does not argue that TILA preempts state law. The Court therefore does not address this issue.

Case 3:11-cv-00367-KC   Document 22   Filed 02/29/12   Page 10 of 14

not clear under state common law whether fraud abrogates the homestead exemption in situations similar to the instant case. *See London v. London*, 342 S.W.3d at 768, 774 n.4 (Tex. App. 2011) (citing *Long Bell Lumber Co. v. Miller*, 240 S.W.2d 405 (Tex. App. 1951)) (noting that *Long Bell* explains that "in a case outside the bankruptcy context, [] the homestead exemption may not be lost by fraudulent acts done with the intent to defeat a creditor.").

Taking Texas as the obvious example, in *Long Bell*, the Court of Civil Appeals of Texas rejected the argument that a homestead exemption had been lost by the appellee's fraudulent acts to avoid judgment on a lien. 240 S.W.2d at 406. *Long Bell* based its decision in part on a statement from the Supreme Court of Texas:

> This exemption from forced sale of a homestead is founded upon public policy, and must be upheld and enforced, as it should be, and has been scarcely without an exception by the courts of this state, notwithstanding the fact that in doin[g] so they sometimes directly assist a dishonest debtor in wrongfully defeating his creditor.

*Id.* (quoting *Cocke v. Conquest*, 120 Tex. 43, 35 S.W.2d 673, 678 (Tex. 1931)).

Since *Long Bell*, multiple courts in both the bankruptcy and non-bankruptcy context have held that in Texas, "homestead rights may only be lost through death, abandonment or alienation." *In re Moody*, 77 B.R. 580, 592 (S.D. Tex. 1987); see also *In re Reitnauer*, 223 B.R. 913, 916 (N.D. Tex. Mar 24, 1998), *rev'd on other grounds* 152 F.3d 341 (5th Cir. 1998) ("[P]laintiff lost her homestead rights . . . by reason of wrongful commingling and other wrongful conduct. Texas law does not recognize that homestead rights can be lost or otherwise adversely affected for those reasons. . . The law is clear in Texas that a homestead may only be lost by death, abandonment, or alienation."). Further, scholars have noted that "[i]n Texas, the homestead right is of such a superior nature to other rights that it is upheld even when creditors

10

have been defrauded." Julie B. Schroeder, Comment, *Perspective on Urban Homestead Exemptions – Texas Amends Article XVI, Section 51*, 15 St. Mary's L.J. 603, 612 n.59 (1984) (citing *Crosswhite v. Moore*, 248 S.W.2d 520, 524 (Tex. Civ. App. 1952); *Long Bell*, 240 S.W.2d at 408; *Garrard v. Henderson*, 209 S.W.2d 225, 229 (Tex. Civ. App. 1948)).

In sum, Plaintiff has not shown that a fraud defense to rescission claims is "well-established," let alone exists, at common law. *See* Br. ¶ 11. Plaintiff has provided no authority that would persuade the Court to issue a default judgment declaring that fraud bar the Defendants' right to assert a TILA rescission claim. Even taking all of Plaintiff's factual allegations as true, Plaintiff has not demonstrated that the Complaint states a viable cause of action. The Court therefore finds that Plaintiff's Complaint fails to allege sufficient facts "to state a claim to relief that is plausible on its face."[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the above reasons, the Court refuses to construe TILA to allow for such a speculative claim, and declines to grant default judgment on this issue.

### 2. Res judicata

The Court now turns to Plaintiff's res judicata argument. Plaintiff's Complaint seeks a declaration that fraud bars the right to rescind a loan under TILA. Compl. ¶ 21. Specifically, Plaintiff requests "that the Court enter judgment that the aforesaid conduct of Defendant Maria Consuelo Dominguez Rodriguez constitutes fraud and bars exercise of the right of rescission by any of Defendants." Compl. ¶ 21. The Complaint explains that "[t]his case will begin,

---

[5] The Court notes that Federal Rule of Civil Procedure 9(b) governs claims of fraud. Fed. R. Civ. P. 9(b). However, because Plaintiff's Complaint does not even meet the lesser *Twombly* standard, the Court does not address whether Rule 9(b) applies in this case.

apparently from scratch, the process of determining how fraudulent inducement by a home equity loan debtor affects the right of rescission under federal — not state — law." Compl. ¶ 20. Indeed, Plaintiff's Brief frames the "decisive question" in this case as "whether borrower fraud in the home equity loan context vitiates the borrower's right of rescission for non-disclosure under [TILA]." Br. ¶ 1.

In apparent support of this claim, Plaintiff's Brief raises — for the first time — the issue of res judicata. Br. ¶¶ 2-9. Specifically, Plaintiff argues that TILA claims are compulsory counterclaims that should have been asserted in state court. Br. ¶¶ 2-9. Therefore, according to Plaintiff, Defendants' TILA rescission claim is precluded by the prior state court foreclosure proceeding. Br. ¶¶ 2-9.

Rule 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "In other words, the relief prayed for in a complaint defines the scope of relief available on default judgment." *Santana*, 2011 WL 3666591, at *3; *see also Penn. Nat'l Mut. Cas. Ins. Co. v. Edmonds*, No. 09-0089-WS-B, 2010 WL 761332, at *6 (S.D. Ala. Mar. 3, 2010) ("The law is quite clear that a plaintiff seeking a default judgment is confined to the specific factual allegations and demands delineated in the Complaint." ).

It is unclear whether a declaratory judgment that *fraud* bars the right to rescind under TILA "differs in kind" from a declaratory judgment that *res judicata* bars the right to rescind under TILA. Indeed, there appears to be little authority addressing the "differ in kind" requirement as it relates to declaratory judgments generally. Further, Plaintiff's res judicata argument does not seem to support the assertion that the Defendants' fraudulent actions foreclose

Defendants' TILA rescission claim, since Plaintiff does not allege that Defendants' failure to assert TILA as a compulsory counterclaim in state court was a fraudulent act. However, it is true that whether based on fraud or res judicata, the ultimate relief requested by Plaintiff is the same: a declaration that Defendants are barred from bringing a rescission claim under TILA. *See* Compl.

Nevertheless, even assuming that the arguments do not differ in kind, the facts contained in the Complaint do not state a claim that res judicata bars Defendants' right to rescind. *See Nishimatsu*, 515 F.2d at 1206 (stating there must be a "sufficient basis in the pleading" to justify a grant of default judgment). The Complaint contains almost no information about the prior state court proceeding. Moreover, not once does the phrase "res judicata" or "claim preclusion" appear in the Complaint. Even the Motion fails to mention res judicata; instead, it reiterates that Plaintiff requests a declaratory judgment that the "conduct of Defendant Maria Consuelo Dominguez Rodriguez constitutes fraud and bars exercise of the right of rescission by any of Defendants." Compl. ¶ 21; Mot. ¶ 10.

Further, the argument goes beyond the scope of the Court's request for supplemental briefing. In the Court's previous Order, the Court instructed Plaintiff to "brief the issue, with citation to legal authority, of how the Complaint states a claim for relief in the form of a declaratory judgment that the borrowers' actions in this case bar the right to a rescission under the Truth in Lending Act." *Evolve*, 2012 WL 113691, at *6. Plaintiff's res judicata argument does not demonstrate how the Complaint states a claim for declaratory relief, as the Complaint contains no substantial facts regarding the prior state court foreclosure proceeding. Indeed, the portion of the Brief addressing res judicata seems to be "nothing more than a poorly disguised

attempt to file a second main brief to advance arguments overlooked in its first main brief." *Plaquemines Port, Harbor and Terminal Dist. v. Fed. Mar. Comm'n*, 838 F.2d 536, 551 (D.C. Cir. 1988) (striking supplemental brief).

"[A] default judgment may not extend to matters outside the issues raised by the pleadings."  Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, 10 Fed. Prac. & Proc. Civ. § 2663 (3d ed. 2002); *see also Santana*, 2011 WL 3666591, at *2 ("[T]he relief prayed for in a complaint defines the scope of relief available on default judgment."). Plaintiff has failed to explain how Plaintiff's res judicata argument aids the Court in deciding whether fraud bars a TILA rescission claim.  Plaintiff has therefore failed to demonstrate that res judicata entitles it to the relief requested in the Complaint.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff Evolve Federal Credit Union's Motion for Default Judgment, ECF No. 17, is **DENIED**.  Because Plaintiff cannot recover the relief requested in its Complaint, the Court **DISMISSES** the case.

The Clerk shall close the case.

**SO ORDERED**.

.

**SIGNED** on this 29th day of February, 2012.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE